Here the final case on the calendar, United States v. Hoskins. May it please the court, Sangeeta Rao on behalf of the United States. This is a government appeal from the partial dismissal of counts arising under the Foreign Corrupt Practices Act. The question for this court is whether Defendant Hoskins as a foreign national operating abroad can be liable for conspiring with or aiding or abetting a U.S. company to violate the FCPA based on the assistance he provided his U.S.-based counterparts, even if he does not fall within the categories of people who can be directly liable for an FCPA offense. And the answer to that question is yes. Well, are we supposed to ignore the list of potential defendants in the statute? Well, that's the question, whether that detailed listing about who is liable under You're supposed to say no. The answer is no. Clearly, no, Your Honor. That detailed listing is for a very specific purpose. The purpose of the statute was that it was carefully crafted to require a U.S. connection when punishing foreign bribery. There's a reason for that. Congress in passing the statute was not concerned with foreign bribery, of all foreign bribery. It was concerned with foreign bribery that had a U.S. connection. The district court recognized that. The Senate and House reports said that. They were concerned that the kind of bribery that harmed U.S. interests by affecting competition among and between U.S. businesses, by harming the reputation of U.S. businesses, and harming U.S. foreign policy by undermining confidence in the United States. But does it purport to reach non-agent foreign nationals located abroad? Yes. So to protect those interests, the main provisions of the statute, the principal liability, covered issuers of U.S. securities and domestic concerns and all of their officers, directors, employees, and agents, because that provided the U.S. connection. There's nothing about those categories that suggests an exclusion for non-agents who still assist those people with a U.S. connection. In other words, the list of people with the U.S. connection is the list of people who can be prosecuted as principals because that's what determines the American interest. Yes. A non-agent foreign national couldn't be prosecuted as a principal under DD2 because what that person wouldn't have a sufficient U.S. connection. The way that that kind of person has a sufficient U.S. connection is through the principal. It's through aiding and abetting the principal. Okay. If an Indonesian national running some kind of business in Indonesia pays a bribe to an Indonesian official to get business, that's not the concern of the United States? That is not. So if, on the other hand, an American company pays a bribe to the Indonesian official to get business, that is what the statute is concerned with? Yes. That is the tie. Now, suppose the American company hires an Indonesian fixer to pay the bribe. Is that person covered as a principal? Yes. The Indonesian middleman is an agent, clearly covered as a principal, a person under the statute. And if the Indonesian agent enlists some other Indonesians to help him out in making connections to Indonesian officials, are they covered as agents of the American company? Yes. We believe they would be. They would not need to be covered as accomplices? They would, well, we believe that they would be agents of the U.S. company. Because they're sub-agents? Yes. So they're acting with the U.S. company. They're still a U.S. interest. They're just another middleman. So it doesn't make a difference how attenuated the connection is to a U.S. company. Is that correct? Because say you answer Judge Lynch by saying that an agent who hires another agent, they would both be liable? Yes, because they're still agents. They would have to meet the test for agents. But as long as they are agents. Well, the connection wouldn't be very attenuated in that case because it's still the American company that's paying the bribe. They're paying the bribe, and we agree that the connection is not attenuated. They have to be an agent of the U.S. Now suppose you had... The principal person. Would it make a difference if the U.S. company gave the first agent a pot of money and said, we don't want to know what you do with it, would that second agent still be liable because of its connection to the American company? The American company, under my hypothetical, doesn't know the existence or the name of the second agent. Would that second agent still be liable? Yes, that wouldn't matter. Knowledge under the statute is defined as knowing or having a reasonable cause to know. So you would still have principal liability for the domestic concern or the issuer. You would still have liability for the foreign agent. I think that Your Honor's question is going to whether the second middleman has to know that there's a U.S. connection. And I think that that goes to due process and notice principles, that that second agent would have to meet the knowledge requirements. They would have to act corruptly, they would have to act willfully, but willfully in the statute does not mean knowing that there's a violation of U.S. law. It means general unlawfulness. They would have to know that they were bribing someone. Yes, they would have to know and act corruptly and all the other very strict knowledge requirements. Bribery is not the kind of thing that people don't know is unlawful. Now suppose the American company that's footing the bill for the bribe and is going to get the business is a subsidiary of a foreign company and the CEO of that foreign company says to the American company, we want you rather than one of our other subsidiaries, for whatever reason you've got the expertise, to get this Indonesian contract. And we know how things work in Indonesia. And I'm instructing you to hire Mr. X, who's the best fixer in Indonesia, give him $100,000 and he'll figure out which Indonesian officials should be paid. Is that person responsible as a principal under the act? I think what you were positing was a foreign subsidiary who works— No, the foreign principal, the foreign parent company, the CEO of the foreign parent company says to the American company, I want you to bribe the Indonesian officials. I can tell you who the guy is you should go to, to hire as your agent in Indonesia to do that. And I want you, the American company, to take that money out of your accounts and you're the one that's going to handle the contract when you get it. That's my hypothetical. They're liable as a causer. They wouldn't be under principal liability. And that's why we— They would not be liable as a principal because they're not an agent of the American company. And your argument is they should be liable as an accessory under Section 2 because they caused the bribe to be completed. That's correct. I should say for purposes of this appeal, we're assuming that someone like Mr. Hoskins is not an agent. And in that scenario, I don't think that there is an argument to be made that that subsidiary is an agent. Right. In my hypothetical, there's no argument such as the argument that you have here as an alternative theory that Mr. Hoskins actually is acting as an agent of the American company. In my hypothetical, the godfather of this bribery scheme who directs the American company to complete the bribe that violates the Foreign Corrupt Practices Act would escape from liability under Section 2 under the defendant's theory. Yes. Your hypothetical is exactly what we spell out in the last pages of our brief where you have a foreign national mastermind who causes all of the actions in the United States to happen, causes American people to do the bribe, American wires, American bank accounts, as in this case. And you're saying this is not much different than the case in which someone says to a bank teller, I know that you have a way of embezzling money from the bank. Please do that. I'm going to explain to you how this works and how you can accomplish this. That accessory is guilty of embezzlement as an accessory, as a causer, even though the statute refers to employees of banks. Absolutely. That is the standard principle of law, that the incapacity of the principle does not defeat secondary liability. Congress was well aware of those principles when it passed this statute. It was well aware of the principle that foreigners who assist domestic people in carrying out a domestic crime can be liable under the statutes, and they were operating under those presumptions. Those are the presumptions that rule here. It would be defendant's burden to show that there is enough in the statute, enough in the statutory text and the purpose and perhaps the legislative history to override those very, very strong presumptions. And that's, they don't exist. Because the text here shows us that the principles have to have a U.S. connection, and the only way that a non-principle of foreign national . . . Well, but there are exceptions to that theory, and one exception is, it seems to me, and you can correct me if I'm wrong, what about the Indonesian official who takes the bribe? Right. So that would be a classic Gabbardi case, where the foreign official is a necessary party. That foreign official is involved in every single transaction. But Congress didn't criminalize . . . Congress clearly understood that such people were the whole point of the scheme, and yet Congress did not make them liable. And in fact, there are sentences in the legislative history that clearly say that the bribe, that the foreign person who accepts the bribe is not the aim of the statute. So when you have a necessary participant, there's a weak inference that supports the Gabbardi inference. But it is a weak inference. In Gabbardi itself, and in Ocasio-Decado just last term, even though there was a necessary party to the transaction who was excluded from primary liability, the Supreme Court didn't say that that person was exempt from secondary liability in all cases. It was only that in those cases, so for example, in Hobbs Act extortion, something more than mere consent or acquiescence would have to be proved. So even in a necessary party analysis, you still need something more. Here in the FCPA, the court in Castle found more. There were these diplomatic concerns. The foreign official clearly wasn't included, and it would have been backed up by legislative history. The district court only dismissed count one, which was the conspiracy and accomplice liability. Isn't that correct? The district . . . There are other counts that are still extant, and eventually, I guess, will go to trial? Well, there are money laundering counts, if that's what Your Honor means. Count one, which was the conspiracy count, was dismissed. Yes. In counts two to seven . . . Because the district court thought that it was that you were trying to get around the fact that this particular defendant was not on the list of persons who were liable under this statute. Isn't that true? Isn't that the basis of why she dismissed that count? Yes. The district court believed that the non-agent theory of liability wasn't viable because of the application of Gabbardi. While she didn't say the words that she was dismissing counts two to seven, she did say that the two theories were the same, that the Gabbardi analysis she was applying applied equally to the conspiracy theory of liability and the aiding and abetting theory of liability. She didn't treat her analysis different in any way. The defendants haven't briefed the question differently in any way. So we believe that entire issue is before the court. Two through seven are not dismissed because . . . a theory of two through seven is dismissed. There's an alternative theory on which you may still proceed on two through seven, which is that Mr. Huskins is guilty as a principal, as a principal in the section two sense, the criminal law sense, because he is an agent of the American company. That theory you're still allowed to go forward with. That's true for all counts one and counts two through seven. We are allowed to go forward on the agent theory of liability for all of those counts. So no count has actually been dismissed. They've been dismissed. Only a theory of one way of proceeding under those counts has been dismissed. They've been dismissed in part under 3731, which allows this appeal. I'd like to just bring you back for a moment to the legislative history and what Congress seemed to be concerned about. It seemed that a large concern was about the extraterritorial application. And Congress specifically enumerates people with certain ties to the United States who are covered by the statute. And so it seems to me that the argument could be made that foreign nationals who lack enumerated ties to the United States are not, are not covered. Well, a two part answer, Your Honor. First the 1998 legislative. They could have mentioned, they could have, you know, listed them and they didn't. They actually couldn't have listed this kind of a non-agent in DD2. Not in DD2. Because there wouldn't have been a sufficient U.S. connection. This is the way, the best way to have a principal have a sufficient U.S. connection and then have a non-agent who was, who could not, would be able to work through the principal. It's really the perfect way to structure a statute so that you get adequate U.S. connection both for a principal and for someone who's secondary liable. That's what the aiding and abetting and conspiracy statutes are for. This court said in Ruffin that the purpose of Section 2 is to get those people who are working behind the scenes. It's to get everyone who's involved in a crime. The United States has the most interest. So that you could reach, you could reach people who are farthest removed from the, from the United States, namely foreign, foreign nationals who are not agents. But who are assisting. Of a domestic concern. Yes, not agents. But. Even if they're not agents. But assisting U.S. based people in committing the crime. I'd just like to point out the 1998 legislative history because in the 1998 legislative history you see Congress actually legislating quite broadly. The point of the 1998 amendments was to broaden jurisdiction in order to come into compliance with the United States treaty obligations. Those treaty obligations, both the House and Senate said that their actions should be interpreted as promoting compliance with the treaty. The treaty in Article 1.1 evinces an intent that bribery of any person should be covered. And in Article 4 that bribes that happen just in part in U.S. territory should be covered. But your citation to the 1998 legislative history cuts both ways because the legislative history of 1998 shows certainly an awareness of foreign nationals. And but when they, when it comes to the legislation itself, it chooses to bring certain foreign nationals within the scope of the FCPA. But it doesn't purport to reach non-agent nationals located abroad. It enacted DD3 which expands the jurisdiction of the United States to foreign agents with no other U.S. connection to U.S. business other than they are committing the crime within the United States. That doesn't have the same purpose as DD2. But what's really important about DD3 is Congress specifically said that that was an expansion of the statute and that it should be in no way interpreted to reduce jurisdiction over foreign nationals in any other statute or regulation, which necessarily includes DD2, Section 2, and Section 37.1. But going to the 1977 legislative history, while there are concerns about extraterritoriality expressed, what I think is much more striking is how narrow Congress is whenever it talks about a foreign national exclusion. Look at when they decide to exclude foreign subsidiaries. The sentence is, we are excluding foreign subsidiaries under the direct prohibitions of the Act, not under the prohibitions of the Act, under the direct prohibitions of the Act. In other words, as a principle. Is there an extraterritoriality concern if a mafia don in Palermo orders a murder to be taken to take place in the United States by an American citizen? There isn't because that's a domestic application of the crime as we've argued. So if there is a corporate godfather in London or Paris who directs an American company to bribe an American official, is there an extraterritorial concern? No, Your Honor. And if there is such a corporate godfather in London who orders an American company to bribe someone in Indonesia, is that an extraterritoriality concern? So the scenario is... My same hypothetical as before. The CEO of the foreign parent directs the American company to violate the Foreign Corrupt Practices Act by hiring an Indonesian bagman or fixer to bribe an Indonesian official. Why is that any more extraterritorial than the godfather ordering some other crime to take place in America done by an American? Well, Your Honor, I'm assuming that it's not just nationality jurisdiction you're talking about. It's misconduct in the United States. So if there was a mafiadon in another country who ordered an American to do something just based on nationality jurisdiction in another country, I think that raises other concerns. But if you have DD2 requirements met, which is a use of interstate wires and everything else that DD2 requires, then certainly the mafiadon is liable. It's a domestic crime in those circumstances. Thank you. May it please the Court. My name is Chris Moravillo, and I've represented Mr. Hoskins since his arrest in 2014. Could you address the jurisdictional point? Your argument, as I understand it, is that this Court lacks jurisdiction? Sorry, Your Honor. Am I correct? You are correct. Because the district court didn't strike allegations that could have been pleaded as a separate count of the indictment. And I understand that that view comes from cases like Margiotta and Tom, but you've got the conference report on the 2002 amendments, which specifically objected to our decision in Tom, and the amended portion of the statute seems to expand the statute to permit appeal from, and I'm quoting, dismissal of part of a count as opposed to the entire count. So if you could address that, that would be helpful. Sure, Your Honor. Nothing was dismissed in Judge Arterton's decision below. She didn't strike any factual allegations. She didn't strike any theory of liability. She didn't strike even part of a count. And so on the plain language of 3731, there's been no dismissal of a count, there's been no dismissal of a part of a count, and of course no suppression of evidence here. In fact— She dismissed a theory, though, didn't she? No, what she did was construe the legal requirements for a conviction under the FCPA to include as an essential element the element of agency. And very importantly, because she's requiring the government to prove agency, the government is free to prove conspiracy under 371 and Section 2, liability. And so there's no theory of liability that is unavailable to the government that was previously available to the government. Well, then why did we have this whole discussion? I mean, why did you ask for this? It's because the government has a theory that you think is legally inadequate, and you wanted the district court to say that is not a valid theory, and they wanted a pretrial ruling so that they could appeal it. I understand. This whole trial had gone on, and then we had a charge conference, and this was the first time this issue came up, and the judge said, I'm going to charge the jury that the only way the government can prevail under Count Juan is if they show that Mr. Huskins was an agent of the American company, well, there we'd be, no appeal. We're in the middle of a trial, life goes on, and whether that instruction—if that instruction was too favorable to the defense, no way to appeal it. But they managed to get a ruling that says their theory is no good. Ex ante, before the trial, a version of this count will not suffice. Why isn't that exactly what Congress wanted to produce in the amendments to the appeal statute? So this all started with the government making a motion in Limine to preclude us from arguing that agency was essential. We then moved to dismiss, right? So this all could have come up in the context of a request to charge— But it didn't. Yes, certainly. It didn't. And so you look at what jurisdiction this Court has to hear interlocutory appeals, which of course are disfavored by the government, and what 3731 says is you look at whether a count was dismissed, a part of a count, or evidence was suppressed. And here, the judge didn't dismiss a count. And I believe it's in Margiata that this Court said that you should not look at the labels that courts place on the action that they take, but you should look at the legal effect of what they're doing. And the legal effect here is, in essence, an early charge conference. This is how I'm going to charge the jury. And so there's been no dismissal, there's no theory of liability that the government can't proceed upon, there's no facts that have been stricken from the indictment. I'm not saying there's no theory they can't proceed upon. They can't proceed upon the very theory that we've been discussing in the government's argument. It may be a wrong theory, but that's a theory of why your man is guilty that has been stricken from this case. The theory of liability is aiding and abetting. The theory of liability is conspiracy under 371. Both of those theories are still alive in this case and are open to the government to prove a trial, provided that it proves an element of the offense that the court found necessary. What was stricken by Judge Auderton? What exactly, what is the effect of the order that she filed? The effect of, the legal effect of the order is that the government is going to be required as an essential element of the FCPA offense to prove that Mr. Hoskins was an agent of a domestic concern. Suppose that we're flatly wrong. I understand you think it's not. Why shouldn't the government be allowed to argue that this is a theory of Section 2 liability? There are various ways in which someone could be guilty as an accomplice. Suppose the judge said, well, he can't be an accomplice just because he ordered the crime. He can only be an accomplice if he handles the money or something like that. That's not a theory of accomplice liability that's being dismissed from the indictment? I don't believe it is, Your Honor, because, again, they can proceed and obtain a conviction under Section 2 or Section 371 here. And all the judge did was require that the government prove an essential element of the FCPA offense. Yeah, because, except, what if it's not an element of the offense? And by saying that it is, the judge has deprived the government of a theory, a viable theory under this indictment that they've brought. Why is that different than dismissing one little factual allegation that they made? It's no different than the factual circumstance that was present in the Margiotta case where Judge Sifton said, you have a mail fraud count, there's two prongs to it. One you need to prove, the government said, we only need to prove fiduciary duty under one of those prongs. And Judge Sifton said, no, you need to prove fiduciary duty under both. And the government appealed. And this Court said, we don't have jurisdiction to do that. Is Margiotta meaningfully distinguishable from Tom? I don't believe that it is. I think Tom is, takes the Margiotta discrete basis of liability test and applies it to And then the Congress specifically says, we're amending the statute to overrule Tom. They didn't say Margiotta, so Margiotta survives, but Tom doesn't? I understand what you're saying, Your Honor. And I don't think that the enactment of 3731 makes Tom bad law or Margiotta bad law. I think one way to discern whether part of a count has been dismissed is to look at whether a discrete basis of liability has been stricken from the indictment. What was Congress then trying to do when it essentially overturned Tom explicitly? They had a purpose. Yes, they did. I mean, oftentimes we don't know what it is that Congress was explicitly meant to do. But here it's explicit with respect to Tom. There were circuits, I believe, pre-3731 amendment that did not allow appeals from partial dismissals of counts. And so what 3731 was making clear, which is what the Supreme Court had made clear in Senate Abria and what this Court had already embraced in Margiotta and Tom, is that you could appeal from the dismissal of a part of a count so long as that part of a count was a discrete basis of liability that could sustain a conviction standing on its own. And here, Judge Arterton did not dismiss a discrete basis of liability. She did not dismiss aiding and abetting liability. She did not dismiss conspiracy liability. Those are all open and available to the government to prove at trial. And therefore, we don't have jurisdiction to consider it. That's correct, Your Honor. In fact, this is an issue that Judge Arterton raised after she dismissed and the government announced that they intended to appeal. She questioned the basis for jurisdiction. And the government suggested at that point that they might, in fact, return a superseding indictment with additional charges that were just based on this theory that she could then dismiss. They decided not to do that. And so here we are. Turning to the main event, to the FCPA allegations, there's no question and no debate that the The government has conceded that. In fact, it's clear from the first paragraph of the indictment. But there's also Section 371 and Section 2. And there's a strong presumption that Congress knew about those sections of the law when they passed this. So ordinarily, accomplices and co-conspirators are prosecutable even if they are not in the class of people to whom the statute applies. I help a bankrupt to hide his assets. I help the bank teller to embezzle money. I'm not an employee of the bank. I'm not a bankrupt. The statute's in question specifically applied to those people, but I can be prosecuted as an accomplice. Isn't that the general presumption? We agree with that. And we think that an exception to that general presumption, which is a narrow exception, is the Gabbardi principle. And we think the Gabbardi principle applies in this case. That's the question. So in Gabbardi and in the Castle decision, which both sides cite from, is it the Fifth Circuit? Yes. We have somebody who is inherently involved in the crime. There's no way Congress could not have known that the foreign official is involved in bankruptcy. And they made a specific decision not to prosecute people like that because they're not our concern. Is there any reason to think that Congress necessarily contemplated that there could be perhaps unusual cases in which a foreign person is in a position to command a violation — that's not Mr. Hoskins necessarily, but my hypothetical from before — in a position to command an American company to break American law? And they must have thought about that, and they must have excluded such persons, because the only people they listed as principles in the Foreign Practices Act are officials of American companies or agents of American companies and so forth. Why would we think that Congress necessarily imagined such a case and excluded it from the usual rules of Section 2 and Section 371? Well, if you look at the text and the structure of the FCPA and the context in which the FCPA was enacted, what Congress was trying to do was regulate foreign bribery, to prevent foreign bribery. By Americans? By Americans, by American persons. But it went beyond that, clearly, because of the breadth of the statute. So there's no intent on Congress to absolutely keep people who aren't Americans out of liability under the FCPA? That's correct. That's correct. In fact, I think the statute itself makes very clear on its face that it applies to many categories of foreign nationals. Those who are officers, those who are directors, those who are employees and agents of domestic concerns and issuers. So what is it that makes you think that Congress intended an exception to the normal rule of Section 371 and Section 2 that makes certain conduct crimes, other than what they explicitly said in their legislative history they didn't want to do? What is the standard Tutatango-Ghibardi principle that says the drug buyer is not an accomplice of the drug seller? All of those are cases where if you allowed that prosecution, it would upset the actual thing that Congress was trying to do, distinguish between the prostitute and the pimp, distinguish between the buyer and the seller, distinguish between the foreign bribee and those who put in motion an American company's bribe. Why would we think that Congress meant to exclude others from that? Congress was legislating in a context in which it knew that there was going to be a significant extraterritorial effect of the statute that it was passing. And inherent in that concern are the difficulties presented by jurisdictional issues, by diplomatic issues, by enforcement issues. The legislative history is replete with references to these concerns that are inherent in this type of extraterritorial application. And so Congress decided to craft a statute very delicately that covered certain people so as not to implicate those concerns as best as possible. And why is it more of a concern? It sounds to me like what's happening here is if the American company hires an Indonesian fixer, the guy that the fixer, the rickshaw driver in Jakarta that the fixer hires, presuming that the rickshaw driver knows that he's helping a crime take place, is covered because he is a sub-agent of the American company. But the guy at the top of the chain in London or Paris who directs the American company to do this, oh, that is something we couldn't allow. That would be too diplomatically troublesome. That would be too extraterritorial. Why would we think that? I'm not sure that, first of all, the definition of agency that you're employing here is the correct one, first of all. Second of all, I think— Well, the fixer is anyway. Leave aside the rickshaw driver. The fixer is an agent. The sub-agent. No question. No question. If you are under the control of the principal and you are acting on their behalf, you are— But the person who actually controls the American company in this activity, they meant—we know that Congress meant to exclude that. Congress meant to exclude foreign nationals who are non-agents, non-officers, non-directors, non-employees of domestic concerns and issuers, and who didn't take conduct in the United States. There are many, many people in that category, not just the ringleader that the government has— Well, there may be someone like Mr. Hoskins, who is not necessarily the ringleader. But if the American company has a consultant—they've got two consultants. They want to hire a fixer in Jakarta, but they don't know anybody in Jakarta. So they talk to somebody in Paris who has dealt in Indonesia before. And they say, here's what we'd like to do. Will you help us? He says, sure, I'll help you. Give me $100,000 and I'll help you. Okay. They pay him $100,000. He then says, I know just the man in Jakarta for you. Here's his address. In fact, he won't talk to you because he's suspicious, but I'll call him and tell him to expect your call and he'll act for you on my behalf. Is that person covered? Which person? The person on the other side of the phone call in Paris? If they are an officer, a director, an agent, or an employee of a domestic concern or an issuer— No, they're not. They're an independent consultant in France. They're just conspiring with the American company to help the American company accomplish this bribe in Indonesia. Then they're not covered. They're not covered directly. They're not covered as a matter of conspiracy liability because— Because conspiracy—Congress meant to exclude Section 2 and Section 371 when they made a list of the people who are the principal violators of this statute. That's correct, Your Honor. And is there anything in the legislative history that says that? The legislative history discusses extensively the concerns that Congress had in enacting a statute that had extraterritorial effect, the jurisdictional, diplomatic, and enforcement concerns. And so we would submit that those concerns, the testimony of the administration and the other individuals that came before it are replete with— This is not really a Gabbardi argument at all, is it? This is not an argument that this is just like Gabbardi where it's inherent in the statute, it's obvious from the statute that Congress must have meant to exclude these people. This is something that we're really relying on the specific legislative history of the statute to accomplish. No, I wouldn't agree with that, Your Honor. I think this is a Gabbardi issue because I think the way they structured the statute, the text, the structure of the statute itself, the way it's organized, and the legislative history evince an affirmative legislative policy to keep certain people in and keep certain people, by definition, out. And the people who are kept out happen to include Mr. Hoskins in this case. They happen to include foreign nationals who are not agents, officers, directors, employees of a domestic concern. Mr. Hoskins' secretary, for example, if Mr. Hoskins or your ringleader directs his—who is not an agent, supervisor—directs his secretary to pack a bag and fill it with cash because he's going to Indonesia to pay a bribe, is she covered by the statute as well? I would submit no. She's not an agent of a domestic concern. She's not an employee of a domestic concern. She's not an officer or a director. So— Well, if she's acting on behalf of the American—if Mr. Hoskins ordered his secretary to take a bag of money to Indonesia to further the business of the French company, that would be an entirely different matter. But if he or anyone directs somebody to go to Jakarta to pay a bribe on behalf of the American company, why isn't she an agent? She's an agent of the American company that she doesn't work for, that don't control her, that couldn't tell her what to do. She's acting directly at the instruction of her direct boss. I would submit that that does not meet the test of agency and would not make her an agent of a domestic concern. So I don't think that the doomsday scenario that the government— the company has to do to avoid liability for its employees is make sure that they act indirectly rather than hiring an agent in Indonesia themselves. All the people that—all the people that get hired indirectly by someone like Mr. Hoskins are no longer eligible—the fixer in Indonesia. If Mr. Hoskins hires the fixer in Indonesia, you're saying that that person is not an agent of the American company because they're acting at the immediate instruction of Mr. Hoskins and the American company doesn't know who they are, doesn't know—can't control their particular acts. They're just trusting Mr. Hoskins to be sure their money isn't stolen. That fixer is not an agent of the American company either? I don't think so. Congress drew very clear lines in enacting the statute. And that's not to say that there are not other windows through which the government can reach that conduct. We still have money laundering charges that we have to deal with when we go back. We still have the FCPA charges that we have to deal with when we go back. And those charges are going to require them to prove agency, of course, but there are other mechanisms that the government can use to prescribe this. Congress, because of its concerns about the extraterritorial effect of what it was legislating in the FCPA, took steps to define the class of people who it was going to regulate. And anyone who is not in that class is out and can't be brought in through the blunt tools of conspiracy, aiding and abetting liability, because those tools will blur the lines that are created. Thank you. Thank you. May I please the Court? My name is Ira Feinberg. I'm here appearing on behalf of the New York Council of Defense Lawyers as amicus curiae. And first of all, we thank the Court for the opportunity to present oral argument today. Our position is that this case is governed by the presumption against extraterritoriality. And I think you're honored to respond to some of the hypotheticals that you've been giving, Judge. You have the presumption wrong. Problem here is that here Congress was acting in an extraterritorial context, and the presumption against extraterritoriality says that Congress has to be clear about its intent to apply extraterritorial, to have an extraterritorial impact, and that where the Congress does pass a law that includes some extraterritorial application, the presumption limits the provision to its terms. That's the wording of Morrison and Keebel. And that's the situation here. Congress carefully considered who should be subject to the FCPA. They were well aware that they were acting in a way that was new and applying U.S. law internationally in a way that would be controversial. Go back to my godfather hypothetical. If there is a mafioso in Naples or Palermo who orders a hit in the United States to take place, that person can be indicted for that violation of law, right? Yes. And that's not an extraterritorial application. That's because that person directed or participated in a crime over which the United States has jurisdiction. Yes. Right? So why is it different if what the foreign official directs is a violation of the FCPA rather than a violation of some more mundane statute? The difference is that Congress thought about the issue in this context. Congress knew it was acting internationally and gave careful attention to how far it wanted to go, who it wanted to cover. There was some indication in the legislative history that there was early talk of maybe aiding and abetting liability here or applying, and yet Congress decided, no, the right way to do this is to find with specificity who was going to be covered—officers, directors, employees, and agents. Why shouldn't we read that as Congress deciding what American nexus is necessary to justify the extraterritorial applications that are going to take place? Because— These are the American nexuses that are necessary. Because that's not what that provision does. There are other provisions in the statute which apply an American nexus. What this does is define who were the defendants who were to be subject to the act. And Your Honor, on the point of whether this would be just a domestic violation that is being applied, I want to direct your attention to the RGR Nabisco case in the Supreme Court just last year, where the Court said that if a statute does have extraterritorial effect, then the issue of the domestic scope doesn't apply. You don't get to—there's a separate analysis. First you have to decide who was subject to the statute, and then you decide whether it had a domestic effect. And what the Court said in that case is that the scope of an extraterritorial statute thus imposed on the statute's foreign application, not on the statute's focus. What you're talking about, Your Honor, is a vast expansion of FCBA jurisdiction, where the U.S. government would claim the authority to be prosecuting all sorts of people worldwide, and not just the boss in Paris, but all sorts of people who were involved and played any role whatsoever. And Congress was saying, no, we're not going to—U.S. law doesn't rule the world. We're not going to extend that far. We're going to step into this very gingerly about how far we're going to go, and we're going to define specifically who's covered. And Mr. Hoskins isn't. Now, the government argued earlier that, well, they couldn't put any language in the statute that would have covered someone who directs an offense. Of course they could have. They could have just as easily said it applies to anybody who commands—that's actually part of the language of Section 2—who commands or directs a violation by the statute. So when Congress enacts a statute that has extraterritorial effect, Section 2 and Section 371 automatically do not apply unless Congress incorporates within that statute language about conspiracy and aiding and abetting? Where Congress has specifically defined who is going to be subject to the act and who is not, the courts—or rather, the government, by its charging decisions, and the courts can't override that dissemination of Congress. But if you look at Section 2 and Section 371, that's a bit of a red herring. We have two statutes. They're both congressional statutes. The government didn't make up either one. Right? The Section 2 and Section 371, are you saying that whenever a statute has extraterritorial applications, Section 2, for example, has no application unless Congress specifically includes people who command, induce, assist in such violations within the terms of the extraterritorial statute itself? What I'm saying is when Congress has specifically thought about the issue, when it is acting extraterritorially and where it limits what people can be covered, then the presumption against extraterritoriality kicks in and the statute is limited to its terms. That's what the Supreme Court has said, and that's the governing principle here. Your point is that Congress could easily, if it had wanted to, use the language from those other sections, but it didn't. Yes. That's exactly right, Your Honor. Although that would have presented other problems. Sorry. That would have presented other problems if they used the language from the other sections. They were very careful to constrain the reach of this statute. They were very careful to constrain it, and that's why they pulled back and didn't try to extend it to try to prosecute anybody in the world. They knew that there would be a lot of international and diplomatic blowback if the U.S. tried to extend its authority too greatly here. And there also was concern reflected in the legislative history about prosecuting people who were fundamentally overseas in terms of that person's ability to gather evidence and other fairness issues that apply when the U.S. is prosecuting a foreign citizen who never set foot in the United States and whose all of his conduct was overseas. So there are good reasons why Congress decided not to go down that road, and this Court shouldn't authorize the government to start charging basically anyone they want who touches any FCPA violation in any way. And that's how far aiding and abetting could go, Your Honor. If there are no further questions, we'll rest on our brief. Thank you. On the RJR Nabisco point, the presumption against extraterritoriality doesn't apply here because this is a domestic application of the statute. In footnote 5 of RJR, the Supreme Court acknowledged that while it's a two-part inquiry, you look to see whether Congress intended the statute to apply extraterritorially, and then if it didn't, whether there's a domestic application of the statute. In footnote 5, it said you don't have to proceed in that order. You can first go to see whether a domestic application of the statute is at issue, and then you don't need to reach extraterritoriality. That's what happened here. I want to ask you a different question, if I may. I heard Counsel Mr. Morvillo suggest that what the government has to prove now is that Mr. Hoskins was an agent of a U.S. issuer, and that's all that they have to prove. Is that correct? Do you agree with the burden of proof that you have? Well, I'm not sure if I totally understand the question. The government is presently allowed to proceed on the agent theory of liability for the conspiracy in aiding and abetting charges. Because it's precluded from trying to prove the offense based on the principle that Defendant Hoskins is a non-agent. So we are precluded on a theory upon which we could obtain a conviction. Tell me what you think you have to prove in order to convict Mr. Hoskins, assuming, for the sake of this question, that we affirm Judge Arterton. We would have to prove the elements of the offense, which are that he is a principal, meaning that he's an agent of the U.S. issuer, an agent of the domestic concern, which is at issue here, which is also in the United States. That's a factual question that Mr. Hoskins disputes, isn't it? He does dispute that, too. So we would be going back for that, but we are precluded from an entire theory of liability upon which we could prevail in front of the jury. And that's why we're allowed to appeal here. Theories of liability like that are regularly decided on motions to dismiss and are regularly appealable, like the Schiff case, where some omissions from SEC statements were considered as a predicate theory of liability to appeal on. When it happens in the context of a dismissal, when a question of statutory construction is decided on a dismissal motion, it's appealable. Questions of statutory construction can come up in a variety of ways. They could come up in a pre-verdict motion for acquittal. Sometimes they're appealable, sometimes they're not. The district court here specifically said that what it was doing was dismissing part of the indictment. If you look at its order, those words are used. Even though it might implicate offense elements or statutory construction issues, that doesn't defeat the appealability of the statute, I'd like to point the Court to language in Tom, which was interpreting Margiata. Margiata was not a dismissal of indictment. The express thing that happened in Margiata was a ruling on jury instructions. So right there, we're very different from this case, which is before this Court on an But even in Margiata, which involved a ruling on jury instructions, this is what the Tom Court said, that this Court has given Section 37-1 a generous construction. And as an example of that, said that Margiata stood for the principle that a ruling on jury instructions could be, quote, deemed sufficient to satisfy the dismissal element of Section 37-31. So Margiata was not about dismissal. It was about whether a partial dismissal was appealable under the pre-2002 version of the statute. Tom makes clear that even an express ruling on jury instructions can operate as a dismissal. We're not saying that all jury instruction issues are appealable, but certainly when the District Court expressly dismisses a part of the indictment, as it did here, that's appealable. Thank you. Thank you, Robert. Thank you all for your vigorous arguments. The Court will reserve decision. The Clerk will adjourn Court.